# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed February 3, 1897.

HOOK, ET AL.,
VS.
WHITE, ET AL.

*Richard B. Tippett & Bro.* for plaintiff.

*J. Charles Linthicum, Alex. H. Robertson* and *Emmons & Emmons* for defendants.

STOCKBRIDGE, J.—

The bill in this case was filed by the plaintiffs as creditors of the Baltimore Extract and Wool Company against the defendants, who were the original incorporators of the Company and who had each received 100 shares of its stock without payment therefor, the said 100 shares each having been issued from certain so-called treasury stock by a vote of the stockholders.

It is not necessary after the repeated adjudications to cite authorities for the proposition that stock so issued, though upon its face full paid stock, is not so regarded by the Courts, and

renders those who accept it liable to bona fide creditors of the corporation, who hold established or admitted claims for an amount equal to the par value of the stock so received by them. Indeed this was practically conceded at the hearing of this case.

The real contention in this case grows out of the character of certain of these claims, and they will therefore be considered in detail.

The plaintiff, Fisher, presents a claim for $1,000, and the plaintiff, Boyd, one for $150, being for the money by them paid respectively for the purchase of capital stock in the Extract and Wool Company, the ground of this claim being that these purchases were induced by false and fraudulent representations made to them respectively with regard to the Company and its actual condition. There is some conflict of testimony as to the character of the representations made, but even assuming that there was all of the false representation claimed by these plaintiffs, and that their purchases of the stock were made in consequence of such representation, the very stock they purchased was tainted with the same fraud as that of the stockholders whom they are now seeking to make responsible to them (Cook on Stockholders, 3rd Edn., Sec. 40) ; and in addition to this their repudiation of the bargain was not made in such reasonable time as is required of one who has been made the victim of such a fraud. The stock was purchased in each case in July, 1894. In one, or at the utmost, two months later these plaintiffs were both aware of the full nature and extent of the misrepresentations made, but it was not until six months after this knowledge was theirs that they ask to have their investment in the stock set aside and their money refunded, and following the reasoning in the case of Fear vs. Bartlett, 81 Md. 442. the Court must hold that after that lapse of time they cannot now be heard to present that claim.

All the other claims are different in their nature, but, as none of them are in the form of judgments, and none of them specifically admitted in the answers, it becomes necessary to pass upon them individually.

Marquette claim : With regard to this there is no evidence whatever, except by the witness Boyd, and he says (page 124) that he knows nothing in regard to it, and this claim cannot, therefore, be allowed.

Cleary claim : With respect to this, also, the testimony is of the most vague and meagre description. The only witness who refers to it is Boyd, who says on page 124 that it is unpaid, but he is silent as to whether the claim is a just and proper one, and this sort of testimony falls far short of making it what can, in the language of the Court of Appeals, be called an "established" claim, and it must, therefore, be disallowed. .

Hook claim : With respect to this the testimony is conflicting. Upon the one side it is positively testified to by the witness Hires, and as positively denied by the witness Frazier. The testimony of the witnesses Boyd and Elliott, while lacking the positive directness of the other two, both tend to confirm the testimony of Hires, and the weight of the testimony is so decidedly in support of the claim that it will be allowed in full.

Boyd claim : For cash loaned, $50. This claim is fully admitted, and will therefore be allowed in full.

Fisher and Boyd claims for salary : With regard to these two claims, the Court has had more difficulty than all the balance of the case. In each case the claims are founded upon written agreements of employment. It is therefore not a question as to the amount due, for if any part is due, all is. The question with regard to these depend upon the knowledge had by the plaintiffs, Fisher and Boyd, at the time of entering into this employment of the fact that the 100 shares of stock transferred to each incorporator other than Frazier had not in fact been paid for, and that the stock issued to Frazier for machinery, had been at such a gross over-valuation as to be a palpable fraud. If they had this knowledge then, they cannot recover as against these defendants, because they entered into their contracts with full knowledge of all the facts, while on the other hand, if they were without such knowledge, then they are entitled to have their claims allowed. It is with regard to this very point that the irreconcilability of the evidence is the greatest, and that which should afford some light, the minutes of the corporation, only confuses matters the

more, since those minutes are palpably false and fraudulent.

The witnesses, Fisher and Boyd, each for himself, denies all knowledge of the Armiger mortgage at that time, and of the manner in which the 100 shares of stock had been transferred to the incorporators, or voted to them for their arduous services, while Frazier and Linthicum, with equal positiveness, assert the knowledge upon the part of these claimants, both with regard to the mortgage and the issuance of this stock, and as affording verisimilitude, the witness, Frazier, testifies to the inspection made by Fisher of books (page 130) which it is impossible to conceive as having been in existence, or if they were the exhibit of which would have been most remarkable and unbusinesslike.

In this conflicting maze of testimony certain facts stand out apparent and uncontradicted. The original incorporation had been in May, and at that time the bonus stock was issued. In July, between the 1st and the 10th, Boyd and Fisher paid in their money, and there were issued to them certificates of stock. Then come the later proceedings claimed to have taken place on July 17th. The minutes are intended to give the impression that a stockholders' meeting was held on this date, and some of the witnesses speak in the same way. Fisher and Boyd were both stockholders at this time, and were entitled to have been present in person or by proxy, at any meeting on July 17th, but neither minutes nor witnesses give the slightest suggestion of their presence or representation. There was no necessity for the correction of a printer's error in stock certificates to begin the organization of the company, de novo, and the absence of these two stockholders from that meeting at which they were entitled to be present, and the assumption of the other to act as representing the entire stock, tends strongly to show that these two claimants were not and had not been made so cognizant of the affairs of the Company as the testimony of the witnesses, Frazier and Linthicum, would seem to make them. It points strongly to a deliberate purpose at this time to keep these claimants in ignorance of the very facts now under consideration, and so to increase the credit to be given to the testimony of the claimants themselves. The pre-ponderance of the evidence is so decidedly against their having had such knowledge of the relations of the bonus stockholders to the corporation at the time of their entering into their respective contracts, that these claims will be allowed in full.

A special defense has been made on behalf of the defendant, Isaacs, that he did not receive any of the bonus stock under the allotment of the 17th of July. It is admitted, however, that he did accept his 100 shares voted at the meeting in May, and so far as these two claims are concerned, they were contracted prior to July 17th, and subsequent to the May meeting, and these obligations were therefore incurred while he was the holder of such stock, and even were that not the case, it would still not operate to relieve him since the proceedings then, as shown conclusively by the testimony, amounted to nothing more than the substitution of certificates of stock with the corporate name properly printed for certificates in which an error had been made, and the minutes filed are a false representation of the then proceedings; and the 100 shares of stock having been issued to and accepted by Mr. Isaacs in May, he can not now relieve himself of liability to the creditors save by showing that the creditors before the creation of the indebtedness to them had actual knowledge of his surrender of the bonus stock, and there has been no attempt to show anything of this sort.

The papers will therefore be referred to an auditor to state an account as between the creditors whose claims have been established and the defendants.